IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHARDSON RFPD, INC., | ) |
| Plaintiff, | ) |
| | ) No. 20-cv-02754 |
| v. | ) |
| | ) Judge Andrea R. Wood |
| NEXUS TECHNOLOGIES, INC., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Richardson RFPD, Inc. ("Richardson") is an electronic component distributor based in Illinois. Richardson claims that in 2018, Defendant Nexus Technologies, Inc. ("Nexus"), an electronics manufacturer based in North Carolina, ordered electronics merchandise from Richardson and then refused to pay. As a result, Richardson has brought this lawsuit for breach of contract and promissory estoppel. Now before the Court is Nexus's motion to dismiss for lack of personal jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). (Dkt. No. 15.) For the reasons provided below, the motion is granted. This case is dismissed for lack of personal jurisdiction.

### BACKGROUND

As the plaintiff, Richardson has the burden of establishing this Court's personal jurisdiction over Nexus. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). A complaint is not required to plead jurisdictional facts but "once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782–83 (7th Cir. 2003). "[W]here, as here, the issue is

raised by a motion to dismiss and decided on the basis of written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Tamburo*, 601 F.3d at 700.

In support of its Rule 12(b)(2) motion, Nexus has submitted an affidavit from its Vice President of Operations containing facts that it asserts demonstrate a lack of jurisdiction. (*See* Def.'s Mem., Ex. A, Decl. of Carolyn Prather ("Prather Decl."), Dkt. No. 16-1.) Richardson responded with an affidavit of its own, from one of its Illinois-based employees. (Pl.'s Opp'n, Ex. A, Decl. of Dave Rossdeutcher ("Rossdeutcher Decl."), Dkt. No. 21-1.) For purposes of ruling on the Rule 12(b)(2) motion, the Court resolves any conflicts in Richardson's favor as the plaintiff. *Purdue Rsch. Found.*, 338 F.3d at 783.

The record before the Court shows that Nexus is a North Carolina corporation with its principal place of business in Fletcher, North Carolina. (Prather Decl. ¶ 3.) It does not have offices in any other state. (*Id.*) Prior to the events giving rise to this lawsuit, Nexus had been doing business with an electronics company called GaN Systems Inc. ("GaN"). (*Id.* ¶ 6.) Then, in July 2017, GaN told Nexus that it would have to place its orders for GaN electronic components through a distributor, Richardson. (*Id.* ¶ 7.) Richardson is a Delaware corporation with its headquarters in Geneva, Illinois. (Compl. ¶ 6, Dkt. No. 1; Rossdeutcher Decl. ¶ 3.) In Fall 2017, Nexus and Richardson started negotiating a large order for electronic components. (Rossdeutcher Decl. ¶ 4.) Over the course of those negotiations, no Nexus employee ever traveled to Illinois. (Prather Decl. ¶ 9.) Instead, Richardson and Nexus negotiated the deal over conference calls and email communications. (Rossdeutcher Decl. ¶ 6.) At first, Nexus discussed the deal with a Richardson sales employee based in Georgia, and then a sales representative based in Maryland. (Prather Decl. ¶¶ 10–11.) Nexus asserts that the Maryland-based employee was its primary point

of contact for the deal. (*Id.* ¶ 12.) But Richardson claims that several of its Illinois-based employees took part in the negotiations as well. (Rossdeutcher Decl. ¶ 5.) Richardson's affiant Dave Rossdeutcher, a strategic marketing manager, personally took part in at least one conference call with Nexus from Illinois and was on many email communications. (*Id.* ¶ 7.) Another Richardson employee, a product manager and the company's contact with GaN, also "helped with negotiations from Illinois." (*Id.* ¶ 8.)

In June 2018, Richardson and Nexus reached a deal for the sale of $600,000 worth of electronic components. (*Id.* ¶ 9; Compl. ¶ 13.) Nexus sent the purchase order for the merchandise to Richardson's address in Chicago, Illinois. (Rossdeutcher Decl. ¶ 11.) In 2018, Richardson shipped $200,000 worth of goods to Nexus. (*Id.* ¶ 16.) Beginning in October 2018, Richardson started sending past due notices to Nexus, instructing it to submit payments to Richardson's Chicago-based lock box. (*Id.* ¶ 19.) In early 2019, Richardson shipped another $105,180 worth of goods to Nexus, for which Richardson claims Nexus never paid. (*See* Compl. ¶¶ 17, 28–30.) Nexus eventually asked Richardson to delay shipment dates for its remaining merchandise and agreed to pay Richardson a carrying cost to hold the unshipped goods. (Rossdeutcher Decl. ¶¶ 20–21.)

On May 7, 2020, Richardson brought this suit for breach of contract, asserting that it was holding $508,790 of unshipped, unpaid-for merchandise on Nexus's behalf. (Compl. ¶ 36.) Count I of Richardson's complaint seeks damages of $105,180 for merchandise Richardson delivered and invoiced but for which Nexus never paid. (*Id.* ¶¶ 37–48.) Count II seeks damages of $508,790 for goods Nexus refused to accept. (*Id.* ¶¶ 49–59.) Alternatively, Richardson brings a claim for promissory estoppel for the full $600,000 contract amount (Count III). (*Id.* ¶¶ 60–65.)[1]

---

[1] While Nexus challenges the Court's personal jurisdiction over it, no party has challenged subject-matter jurisdiction. But "[f]ederal courts 'have an independent obligation to ensure that they do not exceed the

**DISCUSSION**

Richardson has moved to dismiss this case both for lack of personal jurisdiction and for failure to state a claim upon which relief may be granted. Because the issue of personal jurisdiction would require dismissal of all Richardson's claims against Nexus, the Court will consider the Rule 12(b)(2) motion first.

Absent a federal statute specifying otherwise, personal jurisdiction is governed by the law of the forum state. *Tamburo*, 601 F.3d at 700. Thus, this Court must look to Illinois's long-arm statute to determine whether Nexus is subject to personal jurisdiction in Illinois. *Id.* That statute "permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause." *Id.* (citing 735 ILCS 5/2-209(c)). In other words, "the state statutory and federal constitutional inquiries merge." *Id.* The key question in determining personal jurisdiction is whether Nexus has sufficient "minimum contacts" with Illinois such that requiring it to defend this lawsuit here "does not offend traditional notions of fair play and substantial justice." *Id.* at 700–01 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, (1945)). "The defendant's contacts must not be merely random, fortuitous, or attenuated." *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008). Rather, Nexus "must have purposely established minimum contacts with the forum state such that [it] should reasonably anticipate being haled into court there." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012) (internal quotation marks omitted). The notions of fair play and substantial justice also require the Court to consider the

---

scope of their jurisdiction.'" *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 281 (7th Cir. 2020) (quoting *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011)). Therefore, the Court must assure itself of its subject-matter jurisdiction. Under 28 U.S.C. § 1332, district courts have diversity jurisdiction over citizens of different states where the matter in controversy exceeds $75,000. In this case, it appears that the parties are fully diverse: Richardson is a Delaware corporation based in Illinois, while Nexus is a North Carolina corporation based in North Carolina. It also appears that the amount-in-controversy requirement is met because Richardson is seeking damages for the full amount of its contract with Nexus—that is, $600,000.

burden on the defendant of being forced to litigate the matter here, the plaintiff's interest in obtaining relief in its chosen forum, and each respective state's interest in adjudicating the dispute. *Id.* at 677.

Personal jurisdiction can be specific or general. General jurisdiction is premised on a defendant's "continuous and systematic contacts with a state," *see id.* at 673 (internal quotation marks omitted), a high threshold that Richardson does not contend it can meet. The Court will therefore consider only whether Richardson has shown that this Court may exercise specific personal jurisdiction over Nexus. That inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (internal quotation marks omitted). Specific personal jurisdiction exists where "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo*, 601 F.3d at 702 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

When the plaintiff alleges a breach of contract, the question of specific personal jurisdiction "generally turns on whether the defendant purposefully availed himself of the privileges of conducting business in the forum state." *Felland*, 682 F.3d at 674. Simply put, "[t]he record must show that the defendant[] targeted the forum state." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 706 (7th Cir. 2019). The mere fact that the defendant entered into "a contract with a forum resident is not enough, standing alone, to establish jurisdiction in that forum." *Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874, 880 (7th Cir. 2019). Courts instead "consider the parties' 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" *Citadel Grp.*, 536 F.3d at 761 (quoting *Burger*

*King*, 471 U.S. at 479). For instance, the Seventh Circuit looks to factors such as the complexity of the underlying contract and the burden the contract imposes on the forum-based plaintiff. *Compare Citadel Grp.*, 536 F.3d at 762 (reversing dismissal for lack of personal jurisdiction where the planned development project never actually came to fruition, but the plaintiff "incurred a great deal of expense on behalf of" the defendant over the eight-month negotiation period), *with Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 915 (7th Cir. 2015) (affirming dismissal for lack of personal jurisdiction because even though the plaintiff produced goods for the defendants within Illinois, their "agreement was neither highly structured nor long-lasting; instead, it was in essence a contract for the provision of goods"). Courts in this District also weigh other factors, including whether the contract was negotiated or (intended to be) performed in Illinois; whether payment was to be made in Illinois; whether any representative of the defendant ever traveled to Illinois in connection with negotiations; whether the defendant was first to initiate the contract; and the extent to which the defendant directed phone calls or emails into Illinois. *Tata Int'l Metals, (Ams.) Ltd. v. Kurt Orban Partners, LLC*, 482 F. Supp. 3d 737, 746 (N.D. Ill. 2020). No one factor is necessarily dispositive, but each can support the exercise of jurisdiction. *3DD LLC v. Creative Visions, Inc.*, No. 20-cv-03462, 2021 WL 83504, at *3 (N.D. Ill. Jan. 11, 2021).

In this case, the evidence shows that the purchase order was primarily negotiated remotely—by Nexus employees in North Carolina and Richardson employees in Georgia and Maryland. Nexus never sent a representative to Illinois or met in person with Richardson's Illinois-based employees. While not dispositive, these facts are relevant to demonstrating the absence of personal jurisdiction. *See N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 496 (7th Cir. 2014) (affirming dismissal for lack of personal jurisdiction where the "the contracts at issue were formed remotely or in the nonforum state"); *Indigo Olive Software, Inc. v. Country Vintner, Inc.*,

6

No. 14 C 8157, 2015 WL 3545262, at *4 (N.D. Ill. June 3, 2015) (granting a Rule 12(b)(2) motion where the defendant's agents sometimes communicated with the plaintiff's executives in Illinois by phone and email, but they were typically "communicating exclusively with plaintiff's technical support team in Georgia").

Richardson emphasizes that Rossdeutcher, a manager based in Illinois, participated in at least one conference call and appeared on many email communications with a sign-off that showed his address in Geneva, Illinois. (Rossdeutcher Decl. ¶ 7.) But Richardson does not dispute Nexus's assertion that it mostly negotiated the contract with out-of-state sales representatives. Richardson's evidence also does not show how many emails (if any) Rossdeutcher sent with his Illinois signature, how many conference calls he joined, whether he spoke on those calls, or whether Nexus was even aware that he was calling in from Illinois. Richardson asserts that Rossdeutcher provided substantial support to the out-of-state representatives who negotiated the deal and that a product manager in Illinois, Jason Rosenbaum, also helped with negotiations. (*Id.* ¶¶ 7–8.) But Richardson has not provided any facts from which the Court can infer that Nexus knew or should have known that Richardson's Illinois-based employees were involved in the deal. In the absence of such evidence, Rossdeutcher and Rosenbaum's actions merely amount to "the type of unilateral activity by the plaintiff that doesn't factor into the personal-jurisdiction analysis." *See N. Grain Mktg.*, 743 F.3d at 494.

In addition to the emails and conference calls that took place during negotiations, Richardson highlights that Nexus sent the purchase order to an Illinois address and was directed to send payments to an Illinois-based lock box. But these points of contact are too random and attenuated to support a finding of specific personal jurisdiction. *See Lexington Ins.*, 938 F.3d at 879 n.4 ("One mailing to an in-state resident is not enough to submit the sender to the jurisdiction

7

of the state."); *see also id.* at 882 ("It is doubtful that the act of sending payment to an account located within a state is a contact sufficient to support personal jurisdiction."). Nexus's mailing into the forum state would be much more significant if accompanied by other communications targeted at the forum. *See Tata Int'l Metals*, 482 F. Supp. 3d at 746 (finding that the defendant sending a purchase order to the plaintiff in Illinois weighed toward a finding of personal jurisdiction because the defendant also followed up with the plaintiff several times and "continued to reach into Illinois with respect to the transaction"). But the undisputed facts here show that Nexus's point person regarding the purchase order worked in Maryland. (*See* Prather Decl. ¶¶ 10–12.) Therefore, the evidence suggests that Nexus never expressly reached out to Richardson's Illinois-based employees.

Richardson also contends that it performed many of its obligations under the parties' purchase order within Illinois. The efforts the plaintiff made on the defendant's behalf within the forum state are relevant to the question of personal jurisdiction. *Compare Bodine Elec. Co. v. Viking Access Sys., LLC*, No. 09 C 3055, 2009 WL 5173490, at *3 (N.D. Ill. Dec. 17, 2009) (denying a Rule 12(b)(2) motion where the defendant encouraged the Illinois-based plaintiff to "invest[] over 500 hours of engineering time" to design a custom product), *with N. Grain Mktg.*, 743 F.3d at 494 (finding that the plaintiff's sole contractual obligation to pay for the defendant's goods weighed against a finding of personal jurisdiction in the plaintiff's forum). Here, Richardson asserts that Illinois-based employees of its procurement department acquired the components for Nexus, and later, an Illinois-based credit analyst[2] communicated with Nexus employees regarding its obligations under the purchase order. (Rossdeutcher Decl. ¶¶ 13, 15.) As

---

[2] Based on the materials provided by Richardson, it is not clear whether the credit analyst based in Geneva, Illinois was actually Richardson's employee or whether the analyst was an outside provider. (*See* Rossdeutcher Decl. ¶ 13.)

8

for the goods that were the subject of the purchase order, the components included in Richardson's January 2019 shipment to Nexus originated in Taiwan. (Prather Decl. ¶ 13.) Richardson then arranged for those components to be shipped from Reno, Nevada to North Carolina. (*Id.*) In other words, the goods never passed through Illinois. The Court lacks information about Richardson's other shipments. But the fact that Richardson points to the work of its procurement department rather than, for instance, a manufacturing department, suggests that Richardson's sole role in the deal was as a broker. Richardson does not contend that it produced the goods in question—in Illinois or elsewhere. Rather, Richardson connected a non-Illinois producer to a non-Illinois buyer. Overall, the efforts to which Richardson points are not significant enough to support a finding of personal jurisdiction.

As to the question of which party initiated the transaction, the record shows that Nexus reached out to Richardson to begin negotiations. However, Nexus did so only because GaN, a non-Illinois company[3] with which it had a preexisting commercial relationship, advised Nexus that orders for GaN products had to be placed through its new distributor, Richardson. Thus, this is not a case where Nexus "deliberately reache[d] out beyond its home state to avail itself of the benefits" of doing business with an Illinois company. *Bodine Elec.*, 2009 WL 5173490, at *3

---

[3] Neither party has directly offered information about the location of GaN. Nexus, however, provided in support of its motion an email from a GaN representative to Nexus's affiant Carolyn Prather. (*See* Prather Decl., Ex. A, Dkt. No. 16-1.) The email shows that the GaN representative—a Vice President of Sales and Marketing—is based in Ottawa, Ontario (Canada). (*Id.* at 1.) The Court also takes judicial notice of the fact that a Canadian government website providing information about Canadian corporations lists GaN's registered office address as being in Ottawa, Ontario. *See* Gov't of Canada, Fed. Corp. Info., GAN SYSTEMS INC., https://www.ic.gc.ca/app/scr/cc/CorporationsCanada/fdrlCrpDtls.html?corpId=6920071&V_TOKEN=null&crpNm=gan%20systems&crpNmbr=&bsNmbr= (last visited Sept. 17, 2021); *see also* Fed. R. Evid. 201 (providing that a court may on its own take judicial notice of a fact not subject to reasonable dispute because it derives from a source whose accuracy cannot reasonably be questioned); *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012) ("Taking judicial notice of matters of public record need not convert a motion to dismiss into a motion for summary judgment."). While this fact is by no means dispositive, the Court would be more likely to conclude that Nexus purposely availed itself of the privilege of doing business in Illinois if Nexus had reached out to Richardson at the direction of another Illinois-based company.

(citing *D.S. Am. (E.) Inc. v. Elmendorf Grafica, Inc.*, 654 N.E.2d 472, 477–78 (Ill. App. Ct. 1995)). Rather, Nexus contacted Richardson only so that it could continue buying GaN products.

Overall, the Court concludes that Richardson has not met its burden to make a prima facie showing of personal jurisdiction over Nexus. The evidence shows that Nexus negotiated the underlying contract with Richardson's out-of-state sales representatives and did not actively reach into Illinois with respect to the transaction. Considering the notions of fair play and substantial justice, it would not be fair to require Nexus to defend the lawsuit in Illinois when it lacks the minimum contacts with the state.

In opposing the motion to dismiss, Richardson points to other cases in this District in which courts found they could exert personal jurisdiction over out-of-state defendants based on their contracts with plaintiffs inside Illinois. For instance, in *3DD*,[4] the court found it had personal jurisdiction over a North Carolina event planning company that had asked an Illinois-based plaintiff to charter a cruise—even though the parties negotiated the deal for only a month, and only over the phone and by email. 2021 WL 34504, at *1. Richardson also points to *Triad Capital Management, LLC v. Private Equity Capital Corp.*, No. 07 C 3641, 2008 WL 4104357, at *5–6 (N.D. Ill. Aug. 25, 2008), in which the court found that it had personal jurisdiction over an out-of-state corporation that had negotiated a contract with an Illinois-based plaintiff for less than one month. In both cases, no representative or agent of the defendant "ever set foot in Illinois." *Id.* at *3; *see also 3DD*, 2021 WL 34504, at *3. But in both cases, the courts found that they could exercise personal jurisdiction over the defendants due to the extensive phone calls and emails between the defendant and the plaintiff's representatives in Illinois, as well as the complexity of

---

[4] After the parties finished briefing Nexus's motion to dismiss, Richardson moved for leave to file supplemental authority (Dkt. No. 33), directing the Court's attention to *3DD LLC v. Creative Visions, Inc.*, 2021 WL 34504. Because the Court finds the *3DD* opinion a helpful authority and has considered it in drafting the present ruling, Richardson's motion to supplement the record is granted.

the underlying deals. For instance, in *3DD*, the parties negotiated the contract for only a month, but the contract was for the planning of a charter cruise that would not take place for another two years. 2021 WL 34504, at *1. While no representative of the defendant traveled to Illinois, the court emphasized that the defendant "negotiated a complicated and valuable business deal with an Illinois firm through email and the telephone." *Id.* at *3. In *Triad Capital Management*, the parties were negotiating for the defendant's planned acquisition of a company. 2008 WL 4104357, at *1. And though the negotiations did not take place over a long period of time, the court found that the "[s]ustained and intensive contact over the course of several weeks between the parties, and their lawyers and accountants, with the specific aim of arriving at the terms of a contract under the pressure of a short-term deadline, [wa]s not random, fortuitous, or attenuated." *Id.* at *5 (internal quotation marks omitted).

In this case, there is no evidence that Nexus communicated directly with Richardson's Illinois-based employees during the parties' contract negotiations. At most, the evidence shows that a couple of Richardson's managers in Illinois may have participated in negotiations behind the scenes by appearing on email chains, listening in on conference calls, and providing support to the out-of-state sales representatives who actively negotiated the deal. In addition, Nexus and Richardson were not negotiating a complex deal. Rather, their underlying purchase order was simply "for the provision of goods." *Philos Techs.*, 802 F.3d at 915. And even though the parties' negotiations of the purchase order lasted from Fall 2017 to June 2018, there is no evidence that those negotiations were particularly intensive or that the parties had a long-standing commercial relationship. *See id.* at 908–09, 915 (finding that the parties did not have a "long-lasting" agreement when they started negotiations in September, signed contracts in December, and the defendant cancelled the contracts the following August).

In sum, the facts here show that Nexus communicated with agents outside of Illinois to purchase goods originating outside of Illinois and have those goods delivered to Nexus's offices outside of Illinois. The Court concludes that Nexus's contacts with Richardson were simply too attenuated to support a finding of specific personal jurisdiction. Nexus's motion to dismiss is therefore granted.

Because the Court is dismissing the case for lack of personal jurisdiction, there is no need to reach the merits of Nexus's Rule 12(b)(6) arguments.

## CONCLUSION

For the foregoing reasons, Nexus's motion to dismiss for lack of personal jurisdiction is granted. (Dkt. No. 15.) The Court dismisses Richardson's claims without prejudice to it refiling the case in another forum.

ENTERED:

Dated: September 20, 2021

_____
Andrea R. Wood
United States District Judge